Thank you. Our fourth case for argument this morning is Anderson Federation of Teachers v. Rokita. Good morning, your honors. May it please the court. With this court's permission, due to the increased argument time, I would like to reserve five minutes for rebuttal. That's fine. Thank you, your honor. Senate Enrolled Act 297 does not violate plaintiffs' First Amendment rights because it does not create a barrier to association, discriminate on the basis of viewpoint, or compel speech. Under the law, prior to enlisting the state's assistance for ease of convenience in deducting their union dues, plaintiffs receive a government advisement of their constitutional rights. The law then requires that plaintiffs complete minimal ministerial tasks, like completing the standardized form, providing it to their employer, and verifying its authenticity, before accessing the state's payroll deduction system. Plaintiffs, however, remain free to associate however they see fit. The law takes no point of view on any subject, does not tie the use of the state's payroll deduction system to any particular viewpoint, or condition access to the state system on the plaintiffs accepting or opposing a particular position, it applies equally to all teachers, and does not prevent union-supporting teachers from using the state's payroll deduction system. The government has- Ms. Smith, but the requirements are targeted only towards teachers' unions, right? They're targeted towards, to teachers, yes. This statute of- Well, the teachers that join teachers' unions. They're members of teachers' unions. So it's a subset of teachers, yes. Yes, the, I suppose the- And that's the only members of unions that are required to satisfy these particular requirements. They're the only state employee unions that are required to- Union members, yes. Yes, to complete these minimal conditions, yes. But this court made clear in Walker that the two categories of unions that may hold differing viewpoints is not viewpoint discrimination, as long as the law is not tied to a point of view. And here, the law is- And I mean, I think you raise a good point. In Walker, though, the two categories were public safety employees and general employees, right? That's correct, Your Honor. And the list of unions under the general employee category seems like it would be a rather diverse range of unions. So you would have, for example, the teachers' unions, the public employees. You have, you know, the American Federation of State, County, and Municipal Employees that cover all sorts of people. You have lots of different types of unions that would fall within the general employee category. And so one can see how the Walker court might look at that very wide group of unions and say, you know what, there isn't a particular, you know, as far as kind of message that these unions want to send to get out there to the public. But here, you're looking at specifically a teachers' union. So isn't that a meaningful distinction? I understand Your Honor's concern. However, other courts have rejected that claim, specifically the Fourth and Sixth Circuits, where teachers' unions were the only unions that were restricted from accessing the state's payroll deduction system. And those courts said that that was not viewpoint discrimination, that that was a permissible speaker-based distinction because the law was not specifically tied to or conditioned upon a viewpoint. It wasn't, did not require the teachers to accept or reject any particular- Why isn't the relevant viewpoint that I support the union, I'm a member of it, and I want to support it financially? Because we also have other unions that are permitted to access the state's payroll deduction system. So what you're looking at is a speaker- The problem, as Judge Barker pointed out, is this is, given your rationales, this is massively under-inclusive, right? But even if you're looking for a viewpoint, it is, I support my union and I want to financially support it. And that's not a coincidence, that's the targeted behavior here, unlike the so-called coincidental relationship in Walker. Well, again, Your Honor, that would then apply to all state employees, that rationale would have to then apply to all state employees who are paying their union dues through the state payroll deduction system. But it doesn't, right? So you're using the under-inclusiveness then to justify the statute? In a sense, kind of, because that is a permissible speaker-based distinction. And here, Senate Enrolled Act 297 was amending a provision that was part of a larger statutory scheme that applies only to teachers. It's Indiana Code 2029. It is the collective bargaining for teachers. So by nature of the statutory scheme, it cannot apply to other state employees. The legislature would have had to have amended other numerous statutes or another generally applicable law and then made specific carve-outs. But the legislature is not required to enact mass legislation to address a concern. It can kind of go step-by-step. It doesn't have to address a concern in one fell swoop. That's a familiar concept from equal protection law. But would you also agree that in some situations under-inclusiveness can be evidence of viewpoint discrimination? Take, for example, the language from Citizens United, which notes that, in essence, regulating some speakers can be a way of regulating viewpoint. Yes, Your Honor. Generally, the First Amendment imposes no freestanding under-inclusive limitation. It must be content or viewpoint-based to look further at the under-inclusiveness. And here, again, the language of the law is facially neutral because it doesn't condition or tie access to the state's payroll deduction system on any point of view. The law says nothing about speech or association of any kind. The plaintiffs are not, or teachers in general... Well, the fact that the... I mean, you just said that the law is specific to teachers. So the law doesn't have to specify that it's directed towards teachers because within the statutory scheme that governs teachers. And so how is it not evident that the law is basically targeting teachers who are union members? Only union members are accessing the payroll deduction system to pay union dues. So by nature of the provision, it isn't going to apply to non-union members. So the distinction here is not between union members and non-union members. The distinction that is relevant to the analysis is between teachers who are required to comply with the conditions and other state employees who are not required to comply with the conditions. And that's the analysis that... And the distinction that was analyzed in Walker, that's the distinction that was analyzed in the Fourth and Sixth Circuits when they were looking at the specific teacher-based restrictions. And those cases are South Carolina Education Association v. Campbell and Bailey v. Callahan. So when we're looking at those restrictions or conditions, we're not looking at... Because by nature of the condition, they only apply to union members who are accessing the system. They're not going to be subject to them. We are looking at the employees who are subject to the restriction versus the other state employees who are not subject to the restriction. Is the theory here that teachers are just unusually susceptible to peer pressure in overcoming their wills, and they need these special protections from coercive dues collection as compared to state police officers or firemen or firefighters? I don't think so, Your Honor. So I think the difference here is that in Indiana, teachers are the only state employees who are subject to this kind of a labor statute that requires the collective bargaining with the state. Now, the public safety... We're talking about local employees, right? And local governments, right? So the state statute applies to all teachers. Now, there are some additional... So public safety officers, it also permits collective bargaining for public safety officers, but it does not require collective bargaining. So the statute is a little bit different and it is not as extensive. There aren't as many provisions as Indiana Code 2029. And then there are, I think it's Urban Mass Transit and the Regional Transportation Authority, and then some local government personnel are permitted to collectively bargain. But teachers are already substantively treated differently under that larger statutory scheme. And what of that? And the plaintiffs are not challenging that larger statutory scheme. They're just simply challenging this particular provision that was amended. And so the legislature has already determined that it is... Teachers can be treated differently than, say, public safety officers. Let me run a hypothetical by you, if I could. Sure. Our focus here is on unions and union members, but let's suppose a different legislature was concerned about shareholder rights and decided to amend the Corporation Code to require that corporate political expenditures be reported with proof that the board of directors or a shareholder majority vote had authorized them to make sure shareholders weren't being coerced into supporting political speech they didn't support. Would that pose a First Amendment problem, do you think? I haven't really... It's a speaker category, corporations. It's possible, Your Honor. I haven't really thought through that hypothetical. I am running into my rebuttal time. If it's okay, I could try to answer that when I come back. And maybe the legislature might pick and say, this is a requirement that applies only to oil and gas companies and public utilities. That would get closer, I think. Think about it. Thank you, Your Honor. Before I sit down, can I ask you to think about something as well? Of course, Your Honor. Lots of interesting issues in this case. I'm going to ask the other side as well. There's some suggestion in one of the amicus briefs that the general wage assignments, the general statute, does not compel employers to honor requests for wage deductions. That seems to be different from the wage deduction statute governing teachers, because there state employers have to honor that request. My questions are, number one, is that in fact an accurate recitation of the law, and number two, does it matter? I believe that is an accurate recitation. The general wage assignment statute does require that the wage assignment be in writing, signed by the employee personally, and agreed to in writing by the employer. So it does require the employer's agreement before they will or can deduct through the employee's paycheck. And under Indiana Code 2029, the employer is required to deduct when the teacher requests that their union dues be deducted through their paycheck. So yes, I do believe that that is an accurate recitation of the law. And does that apply to all public employees or just teachers? Indiana Code 2029 applies only to teachers. That's the teacher collective bargaining statute. And then the general wage assignment statute applies to essentially everyone else. Understood. But is there a separate public sector requirement that public sector employers across the board honor wage deduction requests? In other words, have a wage deduction system in place and must use it when requested to? For public safety officers, I'm not sure if that is mandatory. I want to say that it is, but I'm not 100%. Now for like urban mass transit and the regional transportation authority, it is not mandatory. Those statutes are very minimal. I believe it's one provision, one sentence that just simply permits collective bargaining between the employee and the state. Thank you. Thank you. Mr. Macy. Thank you, Your Honors. Good morning. May it please the court. I wanted to address the contention that this is a state payroll system. These, as Judge Hamilton pointed out, are local systems. Generally, they're set up through the business office of the local school corporation. And so the dues deduction has traditionally been handled between the member and the local business office of the school corporation. The second thing I wanted to point out was that while the teachers are subject to the Indiana Code that Judge Lee just referenced on collective bargaining, local school corporations also have voluntary agreements with a number of unions like the ones Judge Lee identified in Wisconsin. They have agreements with the municipal, AFSCME, the municipal employees, SEIU in some circumstances. Also municipal governments can voluntarily enter into union contracts and bargain with So there are a number of individual local agreements that take place, and this law only applies to teachers. I did want to address also the question that you asked about the wage assignment. Yes, the wage assignment does involve employer agreement. And traditionally, as I said, employers can agree to all kinds of wage assignments. This is the only assignment that is being singled out that employers can't agree to. I think one of the amicus pointed out that state employees aren't allowed to bargain. I think the amicus, and I can't remember which one said it's illegal for them, I think, to be in a union. That's not true. State employees by statute are allowed to be in a union, they just can't bargain. But state employees are allowed, if their employer agrees, to assign wages to a union, and a number of state employees, after they lost their bargaining rights, are still members of unions. None of that's in the record, but that statutory site is there. It's 415.17.6 explicitly permits union membership. Okay. On the issue of the viewpoint, the viewpoint of the speaker necessarily refers to the identity of the speaker. The literal meaning of viewpoint is the place where the speaker is standing and looking at. I mean, not to get English major on it, but you ask, where do you stand on this issue? The position of the speaker determines the viewpoint. So, laws that explicitly... Well, but in distinguishing Walker, which you have to do, Walker was pre-Janus, right? Yes. And pre-right-to-work in Wisconsin, I believe, right? Yes. I think it's part of that same... And so, that's a little different, it seems to me, from current teachers' unions in Indiana, where membership is completely optional. It's, in essence, open shop after Janus. And you're not paying union dues if you haven't chosen to be a member, right? Yes, Your Honor. And in fact, even in Indiana pre-Janus, there was no agency fee allowed. It is entirely throughout... Since I've been practicing law, and I think I put it in the brief, I think it's around 1995, it's been entirely, for the last at least 30 years, Indiana teacher membership in a union has been voluntary. And unions aren't confined to use their dues simply on bargaining a contract. Unions are allowed to contribute from their general treasury to issue advocacy. They're, in fact, allowed to contribute to state advocacy and candidates, local candidates for school board. So unions... A contribution to a union isn't an act that has no expressive value, no associational expression. It's entirely consistent with the understanding of this court and the Supreme Court that contributing to a union is an expressive act, and it's an expressive act of association. In the Boy Scouts versus Dale case on the Supreme Court, it said that it doesn't require that every member of a group agree on every issue in order for a group policy to be expressive association. So I think, similarly, there's no requirement that there must be a specific identified issue to which you're contributing other than your desire to contribute to the union. And we cited in there many cases where strict scrutiny has been applied in situations where people seek to organize themselves financially. Judge Hamilton mentioned Citizens United. That was about joining into a corporation. That wasn't a subsidy case. No, I agree. This is a subsidy case, and I'm looking for the limiting principle to your argument. You're basically arguing that speaker-based categorizations for burdens like this on access to a subsidy equate to a viewpoint discrimination or constitute viewpoint consideration because there's no way to separate the speaker from the viewpoint. As you said, the speaker stands imbued with the viewpoint, and those two things cannot be separated. Then that means that when the government legislates a subsidy, it can't distinguish between categories of recipients in terms of access to the subsidy in the first place and particular burdens on access to the subsidy if it's going to be made available on different terms to different categories, and I don't think that's the law. So I'm looking for a limiting principle in your argument. It seems to me it's pretty broad when you're talking about a subsidy case, which this is. So we have to situate this within Reagan, or I think it's pronounced Reagan, and the other cases involving subsidies as opposed to speech restrictions, which is what Citizens United was all about. I agree, Your Honor. I think the two limiting principles, one is even in Walker, the very first section of that says that a subsidy must be viewpoint neutral. Oh, understood. But you're arguing that any speaker-based distinction is necessarily viewpoint discriminatory because you can't separate the speaker from the viewpoint. Yes, and I'm saying if it's narrow enough, in this case it is, it is one class, and it's not even as the same. That was the case in Walker. It was public safety unions were excluded from the prohibition on dues deductions. But I think this court in Walker said that they couldn't find a meaningful distinction between the excluded class and the non-excluded class, and therefore it was not viewpoint specific. In this case, I think the distinction is meaningful. It's one class of employee, and it's one class of employee that is seeking to perform a specific act, and that's to contribute financially to the union. It's narrow enough. I'm not grasping the distinction with Walker, and you do, as Judge Hamilton said, have to distinguish that case. There was one class of public employees in that case, public safety employees, that was excluded from the ban on dues deductions under Act 10. Yes. Our court said that's not viewpoint discriminatory as a facial matter, and it's not a facade for actual viewpoint discrimination. And here we've got one particular category of public employees that is being burdened differently than other categories of public employees for purposes of access to the subsidy. I don't know how that doesn't fit within the four corners of what we said in Walker. Well, respectfully, I disagree. I think in Walker the court was saying if you choose to give to the AFSCME, if you choose to give to the utility union, if you choose to give to another union, there's no meaningful relationship between all of those individual choices because they're diffuse. It's too broad. And here it is one group and it's one decision, and it is to give to the teachers union. In Walker, isn't it also correct that the state was arguing that the public safety unions posed a special threat, concerns about labor unrest in the state police, in state prisons, and so on? Yes. Yes. And that's the second argument. That goes to the justification. If this is viewpoint discriminatory, what is the strength of the justification? And it was fairly obvious in that case. I'm not sure it's obvious here. There was a need for a labor piece when you're talking about first responders. And I guess the first line of justification, as I understand, that's being offered in this case by the state is that this is a valid, either rational or perhaps a strong enough justification to pass strict scrutiny. The Janus prophylactic argument that this is a rational Janus prophylactic to make sure that we don't violate anybody's Janus rights, that was the first line of justification. Then the second line is sort of a labor piece argument. I'm not quite sure we didn't get a chance to get into that in your friend's opening argument here, but there was sort of an argument that teachers are special for some reason. Maybe you understand it better than I do. No. On the first front... The Janus prophylactic. The Janus front. I don't think that's relevant. The case is this court has decided since Janus, and it's the Bennett case, I think. That type of waiver isn't necessary. And I think that's doubly important for Indiana because Janus had no effect in Indiana. Well, the question is not whether it's necessary. That's a byproduct of Bennett. The question is whether it's permissional, whether it's a rational basis. If this is not viewpoint discriminatory, if this is viewpoint discriminatory, whether that justification is powerful enough to survive strict scrutiny. Yes, I don't think so. In addition to the lack of effect of Janus or the rationale, but again, it's under-inclusive because Janus also applied to a number of other public employees in Indiana. Like I mentioned, utility workers, AFSCME, SEIU. There are a number of public municipal bargaining unions in Indiana that this law doesn't touch. Okay, so your under-inclusivity argument goes to justification. It doesn't go to the question of viewpoint discrimination? It goes to both. Maybe you can explain that distinction. I think if the justification is under-inclusive, then you say, well, that doesn't make sense. Why are we undertaking this law? Well, it seems to be targeting a very narrow class of people. Because it's targeting a very narrow class of people, we believe it is viewpoint-specific, not viewpoint-neutral. That's how I would frame that argument. So I think it applies to both. Mr. Macy, is there anything in this record about the role of teachers' unions in Indiana politics since World War II? No, there is not. I read the Walker case, and I thought that was pretty good evidence that this was targeted at teachers, and that didn't seem to have any effect on the court. So I'm focusing mainly on the constitutional. Well, it didn't have an effect on the majority of Walker. Yes, yes, Your Honor. So the other point I think the state's trying to make, and I don't want to make the argument for them, but I think it's in their briefs and it's in the amicus. So I'm waiting in treacherous waters here. I'm just going to do it. I think what the state's trying to say is that because we, as a state, provide collective bargaining rights and collective bargaining obligations to teachers' unions, whereas the state, we explicitly don't provide them to state-level employees and all other sub-political or not political subdivisions but municipal corporations, municipalities, have voluntary collective bargaining. Because we have applied this collective bargaining obligation with exclusive representatives, we're essentially allowed to set the dues obligation however we want. This goes to collection. Right, exactly. And so you have to comply with state law when it comes to collection through the payroll deduction. Exactly. So this is not just freedom to contract, et cetera. Right, but again. And collective bargaining in the public sector is heavily regulated. Well, it is and it isn't in Indiana. On the municipal level, it's frankly not regulated very much at all except in this context. And the second portion is the grant of a benefit, and this is just the same subsidy argument. The grant of a subsidy argument doesn't allow a state entity to impose viewpoint-specific requirements on the subsidy. And every employee in the state has the opportunity to make these assignments on a recurring basis without the hoops that we required except teachers. And again, because it's teachers, it's related to the viewpoint of the speaker that's targeted, and it also undermines the state's justification for the imposition of the limitation on the subsidy. Thank you. Thank you. Ms. Smith. If I could make two points, Your Honors. Plaintiffs conflate union membership with the viewpoint of the union and fail to identify what viewpoint teachers' unions express by paying their dues that other state employee unions do not express by paying their dues. So you don't stipulate that unions are expressive associations? They can be in certain contexts, but not in every context. Is it an expressive association in this context? Are teachers' unions expressive associations? No. Members and their unions are distinguishable. Members are distinguishable from the viewpoint of their union. And I have not found any court that has said that a union is inseparable from its viewpoint and that its members are inseparable from its viewpoint, which is what this court would have to find for the plaintiffs. What is the teachers' union empowered to do under state law? So they are empowered to collectively bargain for benefits and anything that benefits teachers. Non-wage benefits? Yes. Not wages. Pardon? Not wages. Non-wage benefits? Yes, I believe so. And so there are numerous reasons why teachers would join a union that have nothing to do with a particular viewpoint. They get certain classroom supports and things of that nature by being part of the union that non-union members would not otherwise receive. And then I just wanted to say that irrespective of Janice, the state does have a legitimate interest in ensuring – and I see that I'm over time. Please, I was going to ask you this question anyway, so go right ahead. The state does have a legitimate interest in notifying employees of their constitutional rights, ensuring employees' constitutional rights are protected, safeguarding the state. And what the state is trying to do here is strike a balance between all of that and ensuring the state and employees are protected and maintaining – In maintaining that balance, does the state make efforts to ensure that teachers are informed that they are entitled to join a union? The unions do that. So the state is not required to do that, but I know the Attorney General does send out – I believe it's an annual notification that does include that right in it, Your Honor. Okay, so that's the Janice prophylactic justification here, or that's what I'm calling it. Let's say we disagree that that's a rational reason because Janice is all about non-members and what their rights are. And what we're talking about here are members. So what's the secondary justification? That would be even irrespective of Janice, Your Honor, because in Janice, that's ensuring a knowing and volunteering waiver of those rights. And so just ensuring that an employee is notified of their rights, safeguarding the state from allegations of improper deductions. The text of the warning that's at issue here that has to be included in the dues deduction form is all about Janice. It's all about their constitutional rights, their First Amendment rights. Free speech rights to avoid subsidizing union speech by not joining a union or paying. Janice was about agency fees for non-members. What I would point out is that the advisement itself is a fact. It is not a viewpoint. A viewpoint is an opinion about a fact, and the advisement itself states a fact. It states their constitutional rights, and it doesn't state any opinion about those rights or about those facts. So what's the justification for it? The district court held, and we really haven't had much discussion of this in oral arguments so far at all, that the warning itself about the constitutional rights is government speech. I would disagree, obviously. And the judge then said it's viewpoint discriminatory because it only applies to this particular small class of public employees. Therefore, we need a justification for treating this class of public employees differently, and it either needs to be a weak justification under national basis review or it has to be a strong justification under strict scrutiny. Before I get to the justification, I just want to make sure I heard you. Did you say that the district court found that it was compelled speech? No. The judge said, and that's why we're here, that it was viewpoint discriminatory. Right, that's correct. Sorry, I thought I heard something about it. And that's why it was struck down, because the judge didn't buy your justification. So the legislature has already kind of laid out in Indiana Code 2029.1.1 their findings and intent of why Indiana treats teachers differently, why teachers have their own collective bargaining statute. And this is the statute that Senate Enrolled Act 297 amended, and it talks about that the state has a fundamental interest in securing harmonious and cooperative relationships with itself, the school corporations, between the teachers and the employees. And, again, here the state is just kind of striking a balance instead of eliminating or completely restricting access to the payroll deduction system in providing a standardized form and having the employee verify its authenticity to then access the state's payroll deduction system. But those findings were entered before the revisions at issue here, right, before the statutes at issue. Those findings were about why teachers are given collective bargaining rights writ large and why we have this whole chapter, as opposed to why we need these particular requirements that brings us all here today for teachers specifically. Well, again, I would just go back to that the legislature is not required to enact mass legislation, and the legislature could go and enact similar legislation for public safety employees or any other employees where collective bargaining is regulated. But because this law has been embroiled in litigation since its enactment, it's reasonable that the legislature has not attempted to enact similar litigation related to other state employees until this litigation is resolved. Walker involved a statewide ban on public employees' access to payroll deductions as relevant here. There were other issues, too. It was a broad-spectrum attack on Act 10. But as relevant here, it involved a state law prohibiting public employees, all general public employees, from having access to the payroll deduction system for union dues except for there was a carve-out for public safety unions. We said the carve-out was okay, was not viewpoint discriminatory because it was speaker-based and that it also had a rational basis to preserve labor peace in the context of first responders. This is different. This is not an exception to a prohibition on access to a subsidy. This is a targeted condition on access to a subsidy. The condition is targeted at teachers union members only. Is that distinction in any way material on how Walker applies here? No, Your Honor, because still we're looking at the distinction between the unions that have these conditions and the unions that do not have these conditions. And that is what makes this a permissible speaker-based distinction. And that's exactly what Walker was talking about, and that's what the Fourth and Sixth Circuits found in South Carolina education in Bailey. Thank you. Thank you, Your Honors. All right, our thanks to all counsel. The case is taken under advisement.